```
                    UNITED STATES DISTRICT COURT

                    EASTERN DISTRICT OF LOUISIANA

KENNY FAIRLEY                                  CIVIL ACTION

V.                                             NO. 13-6495

MURPHY EXPLORATION &                           SECTION "F"
PRODUCTION CO.
```

## ORDER AND REASONS

The defendant, Murphy Exploration & Production Company, moves for summary judgment pursuant to Federal Rule of Civil Procedure 56, dismissing the plaintiff's claim on the ground that the plaintiff was a "borrowed employee" of Murphy at the time of his injury and that Murphy is immune from tort liability pursuant to the provisions of the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 901, et. seq. For the reasons that follow, this motion is GRANTED.

**Background**

The plaintiff, Kenny Fairley, was hired by Wood Group Production Services, Inc. as a mechanic's helper in September 2012. Wood Group is in the business of supplying labor of many types to oil and gas producers. The plaintiff was assigned to work for Murphy on its offshore platform the Front Runner in the Gulf of Mexico.

Aboard the Front Runner, the plaintiff worked with Mike Cancienne, a Wood Group mechanic. He slept and ate on the Front

Runner, and Murphy provided his transportation to and from shore, as well as his tools. Wood Group supplied his uniform, hard hat, and boots, and provided him with substantial training before he began working for Murphy. Murphy paid Wood Group for the labor the plaintiff performed, and Wood Group paid the plaintiff.

On his tenth day working on Front Runner, the plaintiff was injured while climbing down from his bunk bed late at night. In November 2013, he brought this suit seeking damages for his injuries.

## I.

Federal Rule of Civil Procedure 56 instructs that summary judgment is proper if the record discloses no genuine dispute as to any material fact such that the moving party is entitled to judgment as a matter of law. No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio., 475 U.S. 574, 586 (1986). A genuine dispute of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The Court emphasizes that the mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. See id. Therefore, "[i]f the evidence is merely colorable, or is not significantly probative," summary judgment is

appropriate. Id. at 249-50 (citations omitted). Summary judgment is also proper if the party opposing the motion fails to establish an essential element of his case. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In this regard, the non-moving party must do more than simply deny the allegations raised by the moving party. See Donaghey v. Ocean Drilling & Exploration Co., 974 F.2d 646, 649 (5th Cir. 1992). Rather, he must come forward with competent evidence, such as affidavits or depositions, to buttress his claims. Id. Hearsay evidence and unsworn documents that cannot be presented in a form that would be admissible in evidence at trial do not qualify as competent opposing evidence. Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987); Fed.R.Civ.P. 56(c)(2). Finally, in evaluating the summary judgment motion, the Court must read the facts in the light most favorable to the non-moving party. Anderson, 477 U.S. at 255.

## II.

The defendant has moved for summary judgment that the plaintiff was a "borrowed employee" of Murphy at the time of the injury giving rise to this suit. A finding that the plaintiff was a borrowed employee would have the effect of giving Murphy the shelter of Section 905(a) of the LHWCA, which provides that the liability of an employer under Section 904 "shall be exclusive and in place of all other liability of such employer to the employee." If the plaintiff was a borrowed employee, then Murphy is free from

liability.

The nine-factor borrowed employee test is well known:

(1) Who has control over the employee and the work he is performing, beyond mere suggestion of detail or cooperation?

(2) Whose work is being performed?

(3) Was there an agreement, understanding, or meeting of the minds between the original and borrowing employer?

(4) Did the employee acquiesce in the new work situation?

(5) Did the original employer terminate his relationship with the employee?

(6) Who furnished the tools and place for performance?

(7) Was the new employment over a considerable length of time?

(8) Who has the right to discharge the employee?

(9) Who has the obligation to pay the employee?

Melancon v. Amoco Production Co., 834 F.2d 1238, 1244 (5th Cir. 1988). Borrowed employee status is a question of law, but the nine-factor analysis used to answer that question is fact driven. The courts have emphasized the first factor, which examines the control over the employee, though no one factor is dispositive. See, e.g., Brown v. Union Oil Co. of Cal., 984 F.2d 674, 679 (5th Cir. 1993).

The Court finds that the defendants have carried their burden for a summary judgment motion on borrowed employee status:

**(1) Control of the employee**

The plaintiff contends that because he worked as a mechanic's helper, his supervisor was, by definition, the mechanic he helped (Mike Cancienne, a fellow Wood Group employee) rather than a Murphy manager.  The defendant contends that although the plaintiff worked closely with Mr. Cancienne, he was always under the control and supervision of Murphy personnel.  The Murphy Offshore Installation Manager was in charge of all personnel and activities on the Front Runner, and the Murphy Maintenance Supervisor directly oversaw the employees' activities.  Every morning, the staff aboard the Front Runner had a safety meeting or a production meeting, and the OIM, the lead operators, and the maintenance foremen would discuss everything that needed to be done that day.  A tool box meeting followed this general meeting, at which point Murphy personnel would tell the plaintiff what specific job he would be doing any given day.  Murphy personnel told the plaintiff what hours he would be working.

Because of the nature of the plaintiff's job, he worked directly under a fellow Wood Group employee, mechanic Mike Cancienne.  As his helper, the plaintiff would routinely ask Mr. Cancienne questions about his tasks.  Although he worked closely with and for Mr. Cancienne, Mr. Cancienne was not his formal supervisor.  The plaintiff always remained under the control of Murphy personnel who dictated his assignments.  That a more

experienced Wood Group co-worker answered the plaintiff's questions is not sufficient to support a finding that Murphy did not exercise control over the plaintiff. Moreover, the control factor does not require micro-management. See Magnom v. Forest Oil Corp., 2007 WL 2736612 (W.D. La. 2007).

**(2) Whose work was being performed**

This factor must be answered in favor of Murphy. The fact that the plaintiff's work was not directly related to the purpose of the Front Runner (production of oil and gas) does not mean that the plaintiff was not performing Murphy's work.

**(3) Agreement between Wood Group and Murphy as to the employee's status**

The contract between Wood Group and Murphy stated, as they often do, that Wood Group employees are independent contractors and are not to become employees of Murphy. The defendant maintains that the subsequent actions by the defendant, such as supervising the plaintiff's work, providing food and lodging as well as his tools, equipment, and transportation to and from shore were enough to modify the contract provision. See Melancon, 834 F.2d at 1245. The defendant is correct. Here, the facts outside the contract overcome the contract.

**(4) Plaintiff's acquiescence in the new work situation**

The plaintiff contends that in the short amount of time he had worked for Murphy (ten days), he had not yet acquiesced to the new

job. The focus is whether the employee was aware of his work conditions and chose to continue working in them. Brown, 984 F.2d at 678. Regarding the specific condition at issue-the ladder on the bunk bed-the plaintiff had gone up and down it some forty-five times before the accident. At the time of his injury, the plaintiff admitted that the Front Runner was a "permanent assignment," and he had not requested a transfer. That the plaintiff had only spent ten days with Murphy does not mean that he did not acquiesce to his new employment. See Tajonera v. Black Elk Energy Offshore Operations, LLC, 2014 WL 5113322 (E.D. La. 10/10/2014) (finding that seven days on a platform supported a finding of borrowed employee status).

**(5) Wood Group's relinquishment of control over the plaintiff**

"The emphasis when considering this factor should focus on the lending employer's relationship with the employee while the borrowing occurs." Melancon, 834 F.2d at 1244. The plaintiff contends that because he worked directly under a fellow Wood Group employee, he maintained a strong relationship with Wood Group. The fact that the mechanic to whom the plaintiff was assigned was also a Wood Group employee does not mean that Wood Group supervisors controlled the plaintiff's goings on. The only connection between the plaintiff and the Wood Group management during his time at Murphy was the payment of his wages. Wood Group effectively relinquished control over the plaintiff.

7

**(6) Furnishing tools and place to work**

Murphy provided the plaintiff's tools and his transportation to and from the shore. Wood Group provided the plaintiff's uniform and his hard hat, but this is not sufficient. See <u>Billizon v. Conoco, Inc.</u>, No. 91-2749, 1992 WL 516078 (E.D. La. 9/30/1992).

**(7) Employment over a considerable length of time**

Although employment over a significant amount of time supports a finding that the employee is a borrowed employee, "the converse is not true." <u>Capps v. N.L. Baroid-N.L. Industries, Inc.</u>, 784 F.2d 615, 617 (5th Cir. 1986) (finding the seventh factor to be neutral where the plaintiff's injury occurred on his first day of work). Here, this factor is similarly neutral.

**(8) Who had the right to terminate the plaintiff**

Murphy's ability to discharge the plaintiff from Murphy, though not from Wood Group, is sufficient to support a finding of borrowed employee status. <u>Brown</u>, 984 F.2d at 679.

**(9) Who paid the plaintiff**

The plaintiff's wages were based on the hours he worked for Murphy. Murphy paid Wood Group for his labor, and Wood Group paid the plaintiff. Murphy supplied the funds from which Wood Group paid the plaintiff, and that is determinative. See <u>Melancon</u>, 834 F.2d at 1246; <u>Capps</u>, 784 F.2d at 618.

Despite the contract provision to the contrary and the plaintiff's close working relationship with a fellow Wood Group

8

employee, this Court finds that there are no issues of material fact as to the borrowed employee status of Mr. Fairley. Accordingly, the motion for summary judgment is GRANTED.

New Orleans, Louisiana, November 5, 2014

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE